**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 08-58-DLB**

**JANET JEWELL**                                                                                                              **PLAINTIFF**

vs.                                **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                           **DEFENDANT**

\*    \*    \*    \*    \*    \*    \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Janet Jewell filed an application for supplemental security income (SSI) payments on August 2, 2005. (Tr. 23, 58).[1] At the time of filing, Plaintiff was 48 years old and alleged a disability onset date of August 2, 2005. (Tr. 23, 58). She asserts she is disabled due to number of maladies, including numbness in her hands, leg and back; vision problems; blistering of her eyelids; gastrointestinal pain and vomiting; and problems with

---

[1]The Plaintiff has pursued disability claims on four prior occasions. The most recent claim was filed on July 23, 1992, and denied by hearing decision on August 12, 1994. That determination was affirmed by the Appeals Council on December 19, 1994, and not further pursued by Plaintiff. Under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), absent evidence of improvement or deterioration in a Social Security claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. However, ALJ Letchworth noted that the 1994 hearing decision was not available for his review. Inasmuch as *Drummond* relies on the prior hearing decision being available for review, and neither party raised the issue of res judicata before this Court, *Drummond* is inapplicable to the present case.

her nerves. (Tr. 164-70). Her application was denied initially and on reconsideration. (Tr. 45-48, 51-53). At Plaintiff's request, an administrative hearing was conducted on April 5, 2007, by Administrative Law Judge (ALJ) Frank Letchworth. (Tr. 155-182 ). On August 6, 2007, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to SSI payments. (Tr. 15-23). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 19, 2007. (Tr. 4-6).

On February 19, 2008, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #7, 10).

## II. DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly,

an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 17). At Step 2, the ALJ found Plaintiff has "severe" impairments in combination consisting of "complaints of stomach pain; complaints of neck, back, and hand pain; periodontal disease; social phobia; anxiety disorder; and personality disorder." (Tr. 17).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal, one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 19). Specifically, the ALJ evaluated her mental function under Listings 12.06 (Anxiety Related Disorders) and 12.08 (Personality Disorders), concluding that Plaintiff did not meet or equal the requirements of either Listing.

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform medium work with moderate limitations in her ability to deal with work stress. (Tr. 20).

As the Plaintiff had no past relevant work to which she could return, (tr. 22), the ALJ continued to the final step of the sequential evaluation. At Step 5, the ALJ considered the Plaintiff's age, education, work experience and RFC in conjunction with the Medical-Vocational Guidelines ("Grid"), and concluded there exist a significant number of jobs in the national economy that the Plaintiff could perform. (Tr. 22). In doing so, the ALJ noted that Plaintiff's psychological conditions (social phobia, anxiety disorder, and personality disorder) had "little or no effect on the occupational base of unskilled medium work." (Tr. 23). Therefore, the ALJ concluded that a finding of "not disabled" was appropriate under the framework of section 203.00 of the Medical-Vocational Guidelines. (Tr. 23).

    **C.**    **Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected, without proper explanation, the opinion of consultative psychologist Pamela Starkey. Second, Plaintiff contends that the ALJ was not permitted to utilize the Grid to determine whether there existed a significant number of jobs she could perform; rather, Plaintiff asserts that, due to her moderate non-exertional impairment (difficulty dealing with work-related stress), the ALJ was required to employ a Vocational Expert (VE). Each of these arguments will be addressed in turn.

### 1. Because Dr. Starkey is a nontreating medical source, the ALJ was not required to articulate "good reasons" for the weight accorded to her opinion.

Plaintiff contends that the ALJ improperly rejected the opinions of consultative psychologist Pamela Starkey regarding Plaintiff's social anxiety, hypersensitivity to conflict, low self-esteem, and concentration problems. Further, Plaintiff asserts that under 20 C.F.R. § 404.1527 (f)(2)(ii),[2] the ALJ was required to articulate what weight was given to Dr. Starkey's opinion and offer reasons why that opinion was rejected.

Plaintiff's argument fails for two reasons. First, the ALJ did not reject or ignore Dr. Starkey's report; on the contrary, he discussed her report and findings at length in his decision, (tr. 18-19), and incorporated Dr. Starkey's opinion that Plaintiff "is likely to have moderate difficulty dealing with work pressures," (tr. 133), into his RFC determination. (Tr. 20 ("[C]laimant has the residual functional capacity to perform medium work except that she as 'moderate' limitations in the ability to deal with work stresses.")).

Additionally, in his evaluation of whether Plaintiff's mental impairments met or medically equaled one of the Listed impairments, the ALJ made findings regarding the severity of Plaintiff's limitations that reflected (or exceeded) the opinions contained in Dr. Starkey's report. For example, Dr. Starkey opined that "Ms. Jewell is likely to have mild difficulty understanding and remembering simple one- and two-step instructions. She is likely to have mild-to-moderate difficulty sustaining attention to carry out tasks in a work setting. Ms. Jewell's ability to respond appropriately to supervisors and coworkers is likely mildly impaired." (Tr. 133). These opinions are reflected in the ALJ's conclusion that "the

---

[2]The Court notes that because this is an SSI case, the appropriate regulation would be 20 C.F.R. § 416.927 rather than 20 C.F.R. § 404.1527.

claimant has no more than 'moderate' limitations in activities of daily living; no more than 'moderate' limitations in socialization; no more than 'moderate' limitations in concentration, persistence, and pace; and no episodes of decompensation." (Tr. 19). Although the ALJ did not utilize Dr. Starkey's opinions to reach the conclusion desired by the Plaintiff - *i.e.*, a finding of disability - the language used, and analysis contained, in the ALJ's opinion demonstrates that Dr. Starkey's report and findings were neither rejected nor ignored.

Second, although the ALJ did not explicitly articulate how much weight he assigned to Dr. Starkey's opinion, there exists no regulation requiring him to do so. Recently, in *Smith v. Commissioner of Social Security*, 482 F.3d 873 (6th Cir. 2007), the Sixth Circuit held that the Social Security Act's requirement that ALJs "give good reasons" for the weight given to medical opinions applies only to *treating* sources. *Id.* at 876. In reaching this conclusion, the Sixth Circuit emphasized that the applicable regulations classify medical sources into three types - nonexamining sources, nontreating sources, and treating sources - in recognition "that not all medical sources need be treated equally . . . ." *Id.* at 875. Therefore, although the Social Security Administration promises claimants that ALJs "will evaluate every medical opinion [they] receive," 20 C.F.R. § 416.927(d), the promise to articulate "good reasons" for the weight given to a medical opinion extends only to the opinions of treating sources. *See Smith*, 482 F.3d at 876.

As a one-time consultative psychological examiner, Dr. Starkey is properly classified as a nontreating source under the regulations. 20 C.F.R. § 416.902 ("Nontreating source . . . includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source."). Consequently, the ALJ was not required to articulate any reasons for the weight he accorded Dr. Starkey's opinions.

6

**2. The ALJ's Reliance on the Grid was not Reversible Error.**

Plaintiff's second argument on appeal is that the ALJ erred in utilizing the Grid to determine whether there existed a significant number of jobs Plaintiff could perform. More specifically, Plaintiff argues that because she was found to have a moderate non-exertional impairment, the ALJ was required to consult a VE and could not rely solely on the Grids to determine whether Plaintiff was disabled. Under the facts of this case, the Court disagrees.

Because Plaintiff had no past relevant work, Step 5 of the sequential evaluation required the ALJ to determine if she could perform other work, which is defined as jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 416.920(f),(g); 416.960(c). Rather than employ the services of a VE, the ALJ looked to the Grid to determine that there existed jobs Plaintiff was capable of performing. *See* C.F.R. Pt. 404, Subpt. P, App'x 2. When a claimant's vocational characteristics coincide with the criteria of a rule in the Grid, the existence of jobs in the national economy is established and the claimant is considered not disabled. *See* 20 C.F.R. § 416.969; 20 C.F.R. Pt. 404, Subpt. P, App'x 2; *Heckler v. Campbell*, 461 U.S. 458, 461-62, 470 (1983).

In this case, on the date Plaintiff filed her SSI application she was 48 years old, defined as a younger individual, was found to be able to perform work at the medium level, had at least a high school education, and did not possess any transferable work skills. (Tr. 20, 22). Consulting the Grid Table that corresponded to Plaintiff's RFC for medium work at all exertional levels, the ALJ determined that a finding of "not disabled' was appropriate under the framework of section 203.00. (Tr. 23).

The Grid takes into account only a claimant's exertional impairments: *i.e.*, strength for sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. §

416.969a(b). Therefore, reliance upon the Grid is inappropriate where a claimant has a significant non-exertional impairment, *i.e.*, an impairment that "restricts a claimant's performance of a full range of work at the appropriate functional capacity level . . . ." *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981)). If the non-exertional impairment is not significant, the Grid may be used to make the Step 5 determination. 20 C.F.R. § 404.1569a; *Kimbrough*, 801 F.2d at 796-97.

*Kimbrough* is instructive on this alleged error. In *Kimbrough*, the claimant argued that the ALJ improperly applied the Grid to determine disability because pain is a non-exertional impairment and, therefore, precluded the use of the Grid. The Sixth Circuit stated that it is only when the non-exertional limitation restricts performance at the full range of the designated level that reliance on the Grid is improper. The court held that the ALJ's findings that the claimant had no non-exertional impairments, and could do a full range of sedentary work, had the effect of finding that his non-exertional impairment was not sufficiently severe to prevent him from performing a full range of sedentary work. The court noted that the ALJ considered the claimant's pain in reaching his conclusion that the claimant could not perform medium or light work. Upon finding that the objective evidence did not bear out the severity of claimant's pain, the court found substantial evidence existed to support the ALJ's finding, and reliance on the Grids was proper.

Similarly, in the case at bar, the ALJ's conclusion that Plaintiff could perform the full range of medium work had the effect of finding that her moderate non-exertional impairment (difficulty dealing with work stress) did not significantly limit her ability to do a full range of work at the designated level. Indeed, this conclusion is supported by the ALJ's

conclusion that Plaintiff's mental impairment would have little or no effect on the occupational base of unskilled medium work. (Tr. 23). Accordingly, the ALJ was entitled to rely upon the Grid to satisfy the last step of the sequential analysis.

In challenging the ALJ's reliance upon the Grid, Plaintiff is essentially alleging that the ALJ's conclusion--that Plaintiff's non-exertional impairment did not significantly limit her ability to perform the full range of unskilled medium work--was not supported by substantial evidence. However, this argument is not persuasive as the record herein contains substantial evidence that, despite her moderate psychological impairment, the ALJ was correct in finding that Plaintiff could meet the mental and physical demands of unskilled medium work.

The reports submitted by Dr. Schremley, a nontreating physician, Dr. Hoskins, a consultative physician, and Dr. Starkey support the ALJ's conclusion that Plaintiff could meet the mental demands of unskilled medium work. The basic mental demands generally required by unskilled work included the abilities, on a sustained basis, to: understand, remember and carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. SSR 96-9p. Although two of the three medical sources diagnosed Plaintiff with some form of mental illness, none expressed the opinion that Plaintiff demonstrated severe limitations due to anxiety. Indeed, Dr. Hoskins found no overt evidence of any psychiatric illness, stating: "[n]o impairments were observed that clearly preclude communicating, socializing, understanding, learning, seeing, hearing or completing tasks in a regular work environment." (Tr. 96). Dr. Schremley examined Plaintiff on January 19, 2007, and, although he diagnosed her with an anxiety disorder, (tr.

117), he noted Plaintiff was mentally alert with no signs of psychosis or acute distress throughout his examination. (Tr. 116). As discussed above, Dr. Starkey found Plaintiff to have only mild-to-moderate limitations with certain work-related tasks due to her social anxiety, and noted that Plaintiff had a "fair" ability to deal with the public. (Tr. 135). The lack of evidence in the record establishing that Plaintiff suffered from a severe psychological impairment supports the ALJ's conclusion that Plaintiff could perform work that requires little or no judgment to do simple duties that can be learned on the job in a short period of time. *See* 20 C.F.R. § 416.968(a); SSR 85-15. Therefore, the ALJ's determination that Plaintiff's moderate mental impairment did not significantly limit her ability to perform the full range of medium work is supported by substantial evidence. *See Cooper v . Sec'y of Health & Human Servs.*, No. 86-3514, 1988 WL 27503, at *1, *5 (6th Cir. March 31, 1988) (unpublished disposition) ("[T]here is substantial evidence to support the ALJ's finding that claimant's mental impairment did not limit her ability to do a full range of sedentary work, and thus the ALJ was justified in relying upon the grids.").

Because the record does not indicate that Plaintiff had any additional non-exertional limitations, the ALJ was permitted to rely on the Grid to find Plaintiff "not disabled." *See Moon v. Sullivan*, 923 F.2d 1175, 1180-82 (6th Cir. 1990) (claimant's mental impairments did not significantly affect his ability to perform a full range of work at the given exertional level, and thus did not preclude the use of the Grids). As a result, Grid Rule 203.28 satisfied the Commissioner's burden of showing that work existed in significant numbers in the national economy which Plaintiff could perform. *See Campbell*, 461 U.S. at 461-62, 470. Accordingly, the Grid provided substantial evidence to support the ALJ's conclusion at Step 5 of the analysis, and the ALJ did not err in failing to consult a VE during the last

step of his sequential analysis.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #7) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 10) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

This 21st day of October, 2008.



Signed By:
David L. Bunning   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-08-58-JewellMOO.wpd